IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KEITH WATERS,

                    Plaintiff,                    Civil Action No.
                                                  9:13-CV-1437 (LEK/DEP)

        v.

ALBERT PRACK, *et al.*,

                    Defendants.

_____

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

KEITH WATERS, *Pro se*
06-A-2999
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN          COLLEEN D.GALLIGAN, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is an action was commenced pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff Keith Waters, a New York State prison inmate, complaining that the three corrections employees named as defendants violated his civil rights. In his complaint, plaintiff alleges that during the course of disciplinary proceedings against him, the results of which were later annulled, the defendants deprived him of procedural due process and retaliated against him for submitting complaints about the hearing officer and others at the prison facility in which he was confined.

Prior to the close of discovery in the action, plaintiff has moved for the entry of summary judgment in his favor. Defendants oppose plaintiff's motion, arguing that it is both premature and moot in light of the plaintiff's filing of an intervening second amended complaint and that plaintiff cannot establish the lack of any triable issue of material fact regarding his due process and retaliation claims. For the reasons set forth below, I recommend that plaintiff's motion be denied.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 42. While he is currently confined elsewhere, at the times relevant to his claims in this action, Waters was designated to the Greene Correctional Facility ("Greene"), located in Coxsackie, New York. *Id.* at 4.

On January 18, 2013, Waters was issued a misbehavior report by a corrections sergeant who is not a named defendant, accusing him of accepting compensation in return for providing legal services to other inmates and violating a direct order from a law library officer prohibiting him from accepting remuneration for his services. Dkt. No. 42 at 4; Dkt. No. 47-2 at 6. A Tier III disciplinary hearing to address the charges was convened by defendant Eric Gutwein on January 22, 2013, and concluded on March 21, 2013.[2] Dkt. No. 47-2 at 2, 21-33. At the outset of the hearing, plaintiff

_____

1      In light of the procedural posture of this case, the following recitation is derived from the record now before the court, with all inferences and ambiguities resolved in defendants' favor. *Terry v.* Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

2      The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings

lodged an objection claiming that the misbehavior report did not provide him with sufficient information regarding the specific date, time, and place of the charged offense. Dkt. No. 47-2 at 2, 22-23. Defendant Gutwein proceeded with the hearing over plaintiff's objection after determining that the misbehavior report, together with the accompanying letter from another inmate discussing his arrangement with Waters, satisfied the governing DOCCS regulation regarding notice and provided plaintiff with the information needed to mount a defense. Dkt. No. 47-2 at 2. At the conclusion of the hearing, defendant Gutwein found plaintiff guilty on both counts and imposed a sanction that included three months of disciplinary special housing unit ("SHU") confinement, with a corresponding loss of packages, commissary, and telephone privileges, and a recommendation that plaintiff forfeit three months of good time credits. Dkt. No. 47-2 at 2-3, 35-36.

Plaintiff appealed the hearing officer's determination to defendant Albert Prack who, prior to his retirement on December 4, 2014, served as the DOCCS's Director of the Special Housing/Inmate Disciplinary Program.

---

involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

Dkt. No. 47-4 at 1-2. Based upon his review, defendant Prack affirmed the hearing determination on May 8, 2013, concluding that the record did not reflect any due process violation and that substantial evidence supported defendant Gutwein's findings. Dkt. No. 47-4 at 2, 4, 14.

By petition dated May 21, 2013, and a subsequent order to show cause dated July 11, 2013, plaintiff commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") challenging the Tier III determination. Dkt. No. 48-3. Plaintiff's CPLR Article 78 petition was granted by Supreme Court Justice Joseph C. Teresi on October 2, 2013. *Id.* at 1-3. In his decision, Judge Teresi concluded that the misbehavior report issued to the plaintiff failed to comply with the notice requirements of 7 N.Y.C.R.R. § 251-3.1(a) and ordered that the hearing officer's determination be annulled and all references to it expunged from plaintiff's records.[3] *Id.* By the time the Article 78 determination was issued and implemented, plaintiff had already served seventy of the ninety days of SHU confinement ordered by defendant Gutwein. Dkt. No. 42 at 13.

_____

[3]     Following the favorable outcome of his Article 78 proceeding, plaintiff commenced an action in the New York State Court of Claims seeking recovery of damages for his wrongful SHU confinement. Dkt. No. 48-1 at 4.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on November 20, 2013. Dkt. No. 1. Following an initial review of plaintiff's complaint and accompanying *in forma pauperis* ("IFP") application pursuant to 28 U.S.C. §§ 1915(e) and 1915A, Senior District Judge Lawrence E. Kahn issued a decision on June 19, 2014, granting plaintiff leave to proceed IFP and approving the filing of his complaint subject to dismissal of certain claims including, significantly, his procedural due process cause of action. *See generally* Dkt. No. 8.

Following service of the summons and complaint and the filing of an answer on behalf of the three defendants, a mandatory pretrial discovery and scheduling order was issued by the court on August 8, 2014. Dkt. No. 22. The pretrial scheduling order, *inter alia*, established deadlines for the completion of discovery and the filing of dispositive motions. *Id.* Less than a week later, on August 14, 2014, plaintiff filed a motion for the entry of summary judgment in his favor on the remaining claims in his complaint.[4] Dkt. No. 24. The motion was stayed on August 28, 2014, however, in light of an intervening application by plaintiff for leave to file an amended complaint.

_____

[4]     In his motion, plaintiff pressed his procedural due process claim despite its dismissal as a result of Judge Kahn's initial order. *See, e.g.,* Dkt. No. 24 at 44-45, 48-49.

6

Dkt. No. 27. Plaintiff's motion to amend was ultimately granted on November 25, 2014, and a first amended complaint was filed on that same date. Dkt. Nos. 33, 34. A second amended complaint ("SAC"), the currently operative pleading, was subsequently filed by plaintiff on December 15, 2014, with leave of court. Dkt. Nos. 39, 41, 42. In his SAC, plaintiff asserts procedural due process and retaliation claims against Eric Gutwein, Albert Prack, and A.W. Dirie, the Deputy Superintendent of Security at Greene.[5] Dkt. No. 42 at 1-2.

Defendants responded to plaintiff's summary judgment motion on January 7, 2015. Dkt. No. 47. Plaintiff has since filed a reply in response to defendants' opposition and in further support of his motion.[6] Dkt. No. 48. Discovery in the case is ongoing, as evidenced by subsequent filings by the parties. *See, e.g.,* Dkt. Nos. 53, 54, 56, 58, 61. Plaintiff's summary judgment motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. §

---

[5]    In the text order approving the filing of plaintiff's SAC, the court "expresse[d] no opinion as to whether the claims asserted in the [SAC] can withstand a properly filed motion to dismiss or for summary judgment." Dkt. No. 41.

[6]    In his recent submission, which the court has construed as a reply, plaintiff states that the defendants have not only opposed his motion, but have cross-moved for summary judgment. Dkt. No. 48-1 at 5. No such motion has yet been filed, and, pursuant to the court's pretrial scheduling order, the dispositive motion deadline does not expire until April 23, 2015. Dkt. No. 22 at 5.

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

   A.    Rule 56(d) of the Federal Rules of Civil Procedure

As a threshold matter, defendants argue that plaintiff's motion is premature because they have not had an adequate opportunity to conduct discovery and, prior to the deadline for responding, had yet to conduct plaintiff's deposition. Dkt. No. 47 at 4-5.

Neither Rule 56, which governs summary judgment motions, nor the court's pretrial scheduling order, contains a *per se* prohibition against the filing a summary judgment motion prior to the close of discovery. The Second Circuit has explained that, ordinarily, "summary judgment should be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 20 F.3d 94, 97 (2d Cir. 2000) (quotation marks and alterations omitted) (emphasis added). Before granting summary judgment, a court should insure that the non-moving party has "had the opportunity to discovery information that is essential to his opposition to the motion for summary

judgment." *Hellstrom*, 20 F.3d at 97 (quotation marks omitted). "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Id.* (citing *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995)).

Rule 56(d) of the Federal Rules of Civil Procedure "addresses cases where a litigant opposing summary judgment requests additional discovery." *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6-9 (N.D.N.Y. 2000) (McAvoy, J.). The rule provides that,

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may
>
> (1)   defer considering the motion or deny it;
>
> (2)   allow time to obtain affidavit declarations or to take discovery; or
>
> (3)   issue any other appropriate order.

Fed. R. Civ. P. 56(d). It was designed to afford a non-moving party with a fair opportunity to engage in discovery before having to oppose a summary judgment motion.

The mere fact that discovery remains open does not alone compel denial of plaintiff's summary judgment motion. To successfully assert a Rule

56(d) defense to a summary judgment motion, a non-movant "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine [dispute] of material fact, (3) what effort the affiant has made to obtain those facts, and (4) why [those efforts were] unsuccessful[.]" *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir. 1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 925-27 (2d Cir. 1985)); *accord, Crystalline H20, Inc.,* 105 F. Supp. 2d at 6; *Young v. Corbin,* 889 F. Supp. 582, 584-85 (N.D.N.Y. 1995) (McAvoy, J.).

In their opposition, defendants have failed to satisfy the requirements of Rule 56(d). Significantly, their submission does not include an affidavit from any of them or their attorney providing specifics regarding what information is uniquely within plaintiff's knowledge or control and is necessary to afford them an adequate opportunity to respond to plaintiff's motion. *See generally* Dkt. No. 47. In addition, defendants have otherwise failed to satisfy the stringent requirements for invoking Rule 56(d) in opposition to plaintiff's motion. *Id.* I therefore recommend a finding that Rule 56(d) does not serve as an impediment to addressing plaintiff's motion at this procedural juncture.

B.    Mootness

As a second procedural matter, defendants argue that plaintiff's motion is moot in light of the fact that it was filed prior the court's acceptance of plaintiff's SAC and therefore addresses the claims set forth in plaintiff's original complaint, which was superseded by his first amended complaint and again by the SAC. [Dkt. No. 47 at 5](Dkt. No. 47 at 5).

Unlike a motion to dismiss or for judgment of the pleadings under Rule 12 of the Federal Rules of Civil Procedure, a motion for summary judgment does not test the sufficiency of the allegations of a plaintiff's complaint. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment. . ., the plaintiff can no longer rest on the pleadings[.]"). Rather, such a motion calls upon the court to survey the evidentiary record presented in support of and in opposition to the motion to assess whether there exist genuine disputes of material fact precluding the entry of summary judgment. *See, e.g., Behrens*, 516 U.S. at 309 ("On summary judgment. . ., the court looks to the evidence before it[.]"). In this case, plaintiff's two remaining causes of action, which allege a deprivation of procedural due process and First Amendment retaliation, are not materially different from those claims asserted in his original complaint and first

amended complaint. *Compare* Dkt. No. 42 *with* Dkt. Nos. 1, 34. Accordingly,

I recommend the court find that the fact the SAC was filed since plaintiff's

motion was interposed does not stand as a procedural impediment to the

court addressing plaintiff's summary judgment motion.

C.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure. Under that provision, the entry of summary

judgment is warranted "if the movant shows that there is no genuine dispute

as to any material facts and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins.*

*Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d

Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law." *Anderson*, 477 U.S. at

248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

A material fact is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*,

477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### D. Procedural Due Process

The first of the two causes of action set forth in plaintiff's SAC reasserts a claim previously dismissed by the court, alleging that defendants deprived him of procedural due process during the course of the disciplinary hearing conducted by defendant Gutwein and the administrative appeal that followed. *See generally* Dkt. No. 42. Liberally construed, plaintiff argues that no reasonable factfinder could conclude he was not deprived of procedural due process. Dkt. No. 24 at 44-48.

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). In their opposition to plaintiff's motion, defendants focus upon the first of these two elements, contending that plaintiff cannot demonstrate that he was deprived of a cognizable liberty interest.[7] Dkt. No. 47 at 6-7.

---

[7]     While Judge Teresi ruled in his decision concerning plaintiff's CPLR Article 78 petition that the misbehavior report issued to the plaintiff did not satisfy the specificity requirements of the governing DOCCS regulation, the violation of a DOCCS regulation, on its own, is not actionable under section 1983. *See, e.g., Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under [section]

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See*, *e.g.*, *LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.).[8] Accordingly, to determine whether

---

1983."); *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) ("[V]iolations of state law that do not deprive the plaintiff of a right secured by the Constitution and laws are insufficient to support a claim under [section] 1983."). It is not at all clear that the misbehavior report and accompanying letter did not adequately apprise plaintiff of the charges against him and therefore would not satisfy the written notice requirement of the Fourteenth Amendment under the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974).

[8]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

plaintiff may succeed on the pending motion, I must inquire whether the allegations related to the conditions of plaintiff's SHU confinement rise to the level of an atypical and significant hardship under *Sandin*.

Atypicality in a *Sandin* inquiry is normally a question of law. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce*, 139 F.3d at 336; *Hynes*, 143 F.3d at 658.

As to the duration of the disciplinary segregation, restrictive confinement of less than 101 days, on its own, does not generally rise to the level of an atypical and significant hardship. *Davis*, 576 F.3d at 133 (citing *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000)). Accordingly, when the

duration of restrictive confinement is less than 101 days, proof of "conditions more onerous than usual" is required. *Davis*, 576 F.3d at 133 (citing *Colon*, 215 F.3d at 232-33 n.5). The court must examine "the [actual] conditions of [the plaintiff's] confinement 'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" *Davis*, 576 F.3d at 134 (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir.1999)). On the other hand, the Second Circuit has suggested that disciplinary segregation under ordinary conditions of more than 305 days rises to the level of atypicality. *See Colon*, 215 F.3d at 231 ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

Plaintiff's bare allegation that he served seventy days of SHU confinement, standing alone, fails to satisfy *Sandin*'s requirement that the disciplinary sanction imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *Davis*, 576 F.3d at 133. Liberally construed, plaintiff now supplements his allegations regarding the SHU

17

confinement by contending that, as a collateral consequence of defendant Gutwein's guilty determination and sanction, he was removed from a program he refers to as "area of preference/transfer closer to home." Dkt. No. 42 at 4, 6, 10. According to plaintiff, between June 2006 and January 2013, he was eligible to participate in the area of preference program. *Id.* at 4. Although the charges lodged in the misbehavior report issued to plaintiff in January 2013 did not, on their own, render plaintiff ineligible for a transfer as part of the program, plaintiff suggests that the portions of his sanction requiring him to serve ninety days in the SHU and a corresponding loss of good time credits disqualified him for participation. *Id.* at 6, 17. The record is not clear, however, regarding when or if plaintiff was actually removed from the area of preference program.

In 2012, plaintiff selected Sullivan and/or Woodbourne Correctional Facilities for his placement, but the record now before the court contains no evidence that he was ever transferred to either of those facilities. *Id.* at 4. Plaintiff states that in January 2013, he "remained in the Coxsackie HUB but was transferred to Greene and continued to be eligible for his area of prefeerence/closer to home [sic] transfer placement as long as he met the eligibility criteria." *Id.* On February 12, 2014, after plaintiff was sanctioned by

defendant Gutwein at the disciplinary hearing, and after the disciplinary hearing conviction was annulled in state court, Jeff McKoy, the DOCCS Deputy Commissioner of Program Services, wrote plaintiff informing him that he had "been recommended for a transfer to another facility[.]" Dkt. No. 24 at 15. Although plaintiff characterizes this letter as his reinstatement into the area of preference program that had earlier been "rescindedd [sic] as a result of the [T]ier III guilty determination," it is not at all clear, particularly when viewing the evidence in a light most favorable to the defendants, that it proves plaintiff was ever removed from the program. *Id.* at 6. McKoy's letter does not make reference to the area of preference program or indicate plaintiff was being reinstated into the program. Dkt. No. 24 at 15. In addition, as a basis for his retaliation claim asserted against defendant Dirie, plaintiff has contended that Dirie issued a transfer order for plaintiff in retaliation for plaintiff filing grievances in or about this same time period. Dkt. No. 42 at 10. Accordingly, it appears possible, based on the record, that McKoy's letter could be a reflection of defendant Dirie's order for transfer of the plaintiff. Dkt. No. 42 at 10.

In general, aside from plaintiff's vague suggestion, the record is devoid of any definitive proof to support plaintiff's claim that he was

removed from the area of preference program as a result of the sanction imposed by defendant Gutwein following the disciplinary hearing. Plaintiff has not submitted any evidence reflecting that he was removed or when that occurred, and McKoy's letter only reflects that plaintiff was recommended for a transfer in or about February 2014. Although defendants have not addressed this allegation by plaintiff, the record established by plaintiff is sufficient to give rise to a genuine dispute of material fact with respect to whether plaintiff was removed from the area of preference program. Because the evidence before the court contains conflicting evidence regarding the alleged deprivation of plaintiff's liberty interests, I recommend his motion for summary judgment be denied with respect to his due process claim asserted against the three defendants.[9] *See Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000) (holding that in cases where there is factual dispute concerning the conditions or duration of confinement, it may be appropriate to submit those disputes to a jury for resolution); *see also Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

_____

[9] At this time, in light of the genuine dispute of material fact regarding whether plaintiff was removed from the transfer program as a result of the disciplinary sanction imposed by defendant Gutwein, I render no opinion regarding whether, even assuming plaintiff was removed, such a collateral consequence to a disciplinary hearing and sanction may constitute the deprivation of plaintiff's liberty interests.

E.    Retaliation

In his motion, plaintiff contends, in essence, that no reasonable fact finder could conclude that defendants did not retaliate against him in connection with the disciplinary hearing and determination based upon his filing of complaints regarding certain conditions of confinement. Dkt. No. 42 at 6, 8, 10. In their opposition, defendants contend that plaintiff cannot establish a claim of retaliation as a matter of law. Dkt. No. 47 at 7-9.

It is well-established that prison officials may not lawfully take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provision of the First Amendment. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To establish unlawful retaliation under section 1983, a plaintiff must prove that (1) he engaged in protected conduct; (2) the defendants took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to

take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

Because of the relative ease with which claims of retaliation can be incanted, the Second Circuit has advised courts to scrutinize the claim with particular care. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). The Second Circuit explained that

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes*, 239 F.3d at 491.

In this instance, the basis of plaintiff's retaliation claims against each of the defendants is the same. He alleges, and defendants do not dispute, that he engaged in protected activity by complaining of prison conditions,

22

including the practice of imposing disciplinary sanctions upon entire dormitory units at Greene without a disciplinary hearing, and by submitting written complaints concerning the lack of impartiality of defendant Gutwein as a hearing officer.[10] *See*, *e.g.,* Dkt. No. 42 at 6, 8, 10. With respect to the adverse action and causation elements of the retaliation claim, plaintiff contends that defendant Gutwein imposed the disciplinary sanction, and defendants Dirie and Prack reviewed and affirmed the disciplinary determination and sanction, in retaliation for his complaints. *Id.* The record evidence, however, does not support a finding in plaintiff's favor at this juncture regarding causation.

In opposition to plaintiff's motion, defendant Gutwein submitted a declaration in which he stated that he imposed the disciplinary sanction "to impress upon plaintiff that the providing of unauthorized legal assistance poses a risk to the safety and security of the correctional facility." Dkt. No. 47-2 at 3. He denies imposing the sanctions "for the purpose of disqualifying

---

[10]     Plaintiff appears to have shifted the focus of his retaliation claim since the filing of his complaints. In his SAC and earlier filings, as motivation for defendants' allegedly retaliatory conduct, plaintiff cited his concerns voiced in response to a policy to punish all of the members of a dormitory without a hearing and his complaints concerning defendant Eric Gutwein's lack of impartiality. *See, e.g.,* Dkt. No. 42 at 5-6. More recently, however, plaintiff appears to attribute defendants' retaliatory animus to his complaints of sexual harassment and abuse lodged against a law library supervisor at Coxsackie. *See* Dkt. No. 48-1 at 8.

plaintiff from an area of preference transfer or for any other retaliatory reason." *Id.* Additionally, defendant Gutwein denies having any knowledge of plaintiff's complaints to defendant Prack regarding the Tier III hearing. *Id.* In light of this evidence, which squarely contradicts plaintiff's allegations of retaliation by defendant Gutwein, I find a genuine dispute of material fact exists regarding whether defendant Gutwein retaliated against plaintiff for submitting complaints.

Turning to defendant Dirie, although plaintiff contends that he did not take appropriate steps to remedy the alleged deficiencies of the Tier III hearing while it was pending, the record discloses evidence suggesting otherwise. In his declaration submitted in opposition to plaintiff's motion, defendant Dirie states that he responded to plaintiff's letters complaining of the timeliness of the hearing by advising plaintiff that his hearing had been adjourned with the permission of the Central Office. Dkt. No. 47-3 at 3. Defendant Dirie also stated that he personally reviewed the pertinent information regarding plaintiff's letter so he could respond accordingly. *Id.* Finally, defendant Dirie contends that, in his capacity as Deputy Superintendent for Security at Greene, he had no authority to review and reverse the disciplinary conviction. *Id.* If credited, these statements lead me

to find that a reasonable factfinder could conclude, based on the record now before the court, that defendant Dirie responded to plaintiff's letters with no retaliatory animus.

Finally, plaintiff accuses defendant Prack of retaliating against him for filing complaints regarding defendant Gutwein's alleged impartiality by affirming his appeal of the disciplinary conviction and failing to adequately respond to his complaints regarding the timeliness of his Tier III hearing. Like defendants Gutwein and Dirie, defendant Prack has submitted a declaration in opposition to the pending motion denying plaintiff's allegations. Dkt .No. 47-4 at 1-5. According to defendant Prack, after reviewing the materials relevant to plaintiff's appeal, he affirmed defendant Gutwein's disciplinary determination. *Id.* at 2, 4, 14. Defendant Prack also stated that he responded to plaintiff's letters regarding the alleged deficiencies with the hearing, submitted while the hearing was pending, by advising him that he would have the opportunity to present evidence during the disciplinary hearing and, in the event he was found guilty, he could appeal the unfavorable determination. *Id.* at 2-3, 18. This evidence, if credited, could lead a reasonable factfinder to conclude that defendant Prack properly responded to plaintiff's correspondence based on the

information available to him at the time and not in retaliation for the mere filing of the correspondence.

At a minimum, the allegations set forth in defendants' affidavits raise genuine disputes of material fact regarding whether the conduct of defendants Gutwein, Dirie, and Prack was causally related to plaintiff's First Amendment protected activity. Accordingly, I also recommend plaintiff's motion for summary judgment be denied with respect to his retaliation claims.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff has moved, prior to the close of discovery, for summary judgment on each of his two remaining causes of action. Based upon my finding that, at a minimum, genuine disputes of material fact exist precluding the entry of summary judgment on both counts, it is therefore hereby respectfully

RECOMMENDED that plaintiff's motion for summary judgment (Dkt. No. 24) be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     March 5, 2015
          Syracuse, New York



Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Mark LABOUNTY, Plaintiff,
v.
Philip COOMBE, Jr., Wayne Strack, and Donald
Selsky, Defendants.
No. 95 CIV 2617(DLC).

Dec. 26, 2001.
Mark LaBounty, Pro Se, Marcy Correctional Facility,
Marcy, for Plaintiff.

Michael J. Keane, Assistant Attorney General, Office of
the Attorney General of the State of New York, New
York, for Defendants.

OPINION AND ORDER

COTE, District J.

**\*1** On April 17, 1995, Mark LaBounty ("LaBounty"),
who is presently incarcerated at Marcy Correctional
Facility, brought this action *pro se* pursuant to 42 U.S.C.
§ 1983 ("Section 1983"), alleging that the defendants
violated his constitutional rights while he was an inmate at
Fishkill Correctional Facility ("Fishkill"). On November
25, 1996, the Court granted in part the defendants' motion
to dismiss. On February 5, 2001, the Court of Appeals for
the Second Circuit vacated in part the November 25, 1996
decision, and remanded LaBounty's procedural due
process claim for further development.[FN1] This claim stems
from LaBounty's wrongful confinement in "SHU" for 30
days, a claim that this Court had dismissed for failure to
identify a violation of a liberty interest. After discovery,
defendants now move for summary judgment. For the
reasons set forth below, the motion is denied.

> FN1. The claims brought by the plaintiff that
> survived summary judgment were tried before a
> jury on October 4, 1998. On October 6, 1998,
> the jury returned a verdict for LaBounty on his
> claim that Nurse Millie Rivera had been

deliberately indifferent to his serious medical
needs and awarded him $1 in nominal damages.
The Second Circuit denied the appeals from the
trial and the summary judgment opinion, but
reversed the dismissal of the due process claim at
issue here. *LaBounty v. Kinkhabwala,* No.
99-0329, 2001 WL 99819 (2d Cir. Feb. 5, 2001).

BACKGROUND

LaBounty's allegations against the defendants are
fully described in the Court's November 25, 1996 Opinion,
familiarity with which is presumed. *LaBounty v.
Coombe, et al.,* No. 95 Civ. 2616, 1996 WL 684168
(S.D.N.Y. Nov. 25, 1996). Here, the Court only describes
those facts necessary for the purposes of this motion.[FN2]

> FN2. To the extent that the plaintiff reiterates in
> his opposition claims that have been previously
> dismissed or makes new claims unrelated to the
> issues which have been remanded, those claims
> are not properly before this Court and the Court
> does not consider them here.

By Order dated February 13, 2001, the Court
described the issues remanded by the Court of Appeals for
further development as follows:

1. The plaintiff's procedural due process claim that the
disciplinary hearing held on January 23 and 27, 1995
was delayed, that witnesses at that hearing were
examined outside his presence, and that Vuturo
prejudged the merits of the hearing.

2. Whether plaintiff's due process rights were violated
while he was in SHU during the period beginning on
January 27, 1995, by

(a) a denial of medication for his ear infection;

(b) the prescription of Flexeril for a back condition;

(c) Nurse Rivera substituting his back pain medication
with an unknown drug which caused him dizziness and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

head and stomach aches;

(d) a denial of paper and pencils;

(e) a denial of out-of-cell exercise;

(f) a denial of access to library books;

(g) not being permitted to mail letters in the evening; and

(h) the censorship or destruction of his mail, legal documents, and personal papers.

3. Whether, under *Sandin v. Conner,* 515 U.S. 472 (1995) and its progeny, the plaintiff has a liberty interest sufficient to bring the due process claims described in items 1 and 2.

The parties were ordered to inform the Court if they had any other understanding of the Court of Appeals' Order of remand.

By letter dated February 27, 2001, the defendants agreed that the February 13, 2001 Order correctly described the remanded issues. By letter dated February 17, 2001, the plaintiff also agreed with the description of the issues, but indicated a wish to add three additional issues. By Order dated February 28, 2001, the Court found that the issues remanded for further development were those described in the February 13, 2001 Order.

**\*2** The following facts are undisputed or as shown by the plaintiff unless otherwise noted. On January 12, 1995, LaBounty went to the clinic at Fishkill to renew his prescriptions for hypertension medication, and to complain of an ear infection. On that day, Nurse Ronald Waller issued an "Inmate Misbehavior Report" against him, which included the charge of refusing a direct order. Also on that day, Robert L. Macomber issued a "Inmate Misbehavior Report" against LaBounty, which included the charge of possessing outdated medications in his cell.

*Tier III Hearing*

On January 23 and 27, 1995, hearing officer Joseph

Vuturo ("Vuturo") conducted a "Tier III" disciplinary hearing to address the charges against plaintiff. [FN3] On January 27, Vuturo found LaBounty guilty of violating a direct order and possessing outdated medications. Vuturo sentenced LaBounty to 90 days of segregated confinement in the Special Housing Unit ("SHU"), of which 60 days were suspended. LaBounty served 30 days in SHU, beginning on January 27, 1995.

> FN3. Tier III hearings are held for " 'the most serious violations of institutional rules." ' *Colon v. Howard,* 215 F.2d 227, 230 n. 1 (2d Cir.2000) (citation omitted).

On January 27, 1995, LaBounty appealed his conviction to the Commissioner of the Department of Correctional Services ("DOCS"). On March 22, 1995, the DOCS Director of the Special Housing / Inmate Disciplinary Program, defendant Donald Selsky ("Selsky"), reversed LaBounty's conviction on the charge of possessing outdated medication because the "[m]isbehavior report fail[ed] to support [the] charge." On February 6, 1996, Selsky "administratively reversed" plaintiff's conviction on the only remaining charge-disobeying a direct order-"due to off-the-record communication used as evidence in hearing." Selsky directed that any records containing references to the January 27, 1995 hearing be expunged.

*SHU Conditions*

The SHU regulations provide that, while in SHU, inmates are confined to their cells for 23 hours a day, and are permitted to leave their cells for recreation, visits to the medical department, legal visits, guidance or counselor interviews, and for showers two times per week. SHU may be imposed for disciplinary and non-disciplinary, or administrative, reasons. Between January 1, 1991 and December 31, 1996, 162,601 of the 215,701 inmates in the New York correction system received "confinement sanctions." 106,265 inmates were penalized by "keeplock" confinement. In 1993, 4.2% of the inmates in DOCS' confinement were sentenced to SHU, and in 1994, 4.8% were sentenced to SHU.

*Plaintiff's Experience in SHU*

While in SHU, LaBounty was deprived of all of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

pain medication which had been prescribed for "constant severe pain related to his spinal condition," [FN4] as well as medication for an ear infection. LaBounty complained to defendant Nurse Rivera and to other medical staff that he was not receiving his pain medication and that he was suffering from an ear infection, but he received no response from them. On February 13, 1995, LaBounty was prescribed "Flexeril" by a physician's assistant, but LaBounty claims the medicine was merely prescribed as a "pretext" and that it did not help his severe pain or his ear infection. LaBounty was in "constant severe pain for the duration of his 30-days in SHU." LaBounty was not treated for his ear infection until he was released from SHU and given a CAT Scan. The CAT Scan revealed that the ear infection had become "Mastoiditis." As a result of the untreated ear infection, LaBounty lost the hearing in his right ear.

> FN4. Plaintiff asserts that his spinal condition was, at all relevant times, well-documented and diagnosed.

**\*3** While he was in SHU, LaBounty was prescribed one refill of his hypertension medication. A nurse gave the refill to officers, but the officers refused to give plaintiff his medication. After LaBounty repeatedly threw his bed against the cell door, the SHU evening supervisor came to his cell and later ordered the SHU officer to give LaBounty his medication.

While he was in SHU, LaBounty was deprived of any "out-of-the-cell exercise," which he requested each day. He was given only two showers during his 30 days in SHU, and each shower was only one to two minutes long. He requested a pen from the SHU officer in order to write his appeal to the Commissioner, and the officer refused. Plaintiff later received a pen from the "porter." [FN5] Plaintiff requested other writing materials from the officers, but they did not give him any. LaBounty received all of his writing materials from the porter and other inmates when they were let out for exercise. Before he was released from SHU, the officers opened LaBounty's "property bags" and "removed legal material relevant to this case and other pending cases." LaBounty was refused books and newspapers while he was in SHU despite requesting them.

> FN5. A porter is an inmate who is also serving a sentence in SHU.

## DISCUSSION

Summary judgment may not be granted unless the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The substantive law governing the case will identify those issues that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1987). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the nonmoving party. *See Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P. *See also Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). In deciding whether to grant summary judgment, this Court must, therefore, determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the facts in dispute are material based on the substantive law at issue.

Where, as here, a party is proceeding *pro se,* this Court has an obligation to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Nonetheless, a *pro se* party's "bald assertion," completely unsupported by evidence, is insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

### A. *Protected Liberty Interest*

**\*4** A claim for procedural due process violations requires a determination of "(1) whether the plaintiff had a protected liberty interest in not being confined and, if so,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

(2) whether the deprivation of that liberty interest occurred without due process of law." *Tellier v. Fields,*-F.3d-, 2001 WL 457767, at *7 (2d Cir. Nov. 1, 2000) (errata filed Apr. 26, 2001) (citation omitted). After the Supreme Court's decision in *Sandin v. Connor,* 515 U.S. 472 (1995), a determination that there is a liberty interest also requires a two-part analysis. *Tellier,*-F.3d-, 2001 WL 457767, at *7. " 'As a result of *Sandin,* a prisoner has a liberty interest only if the deprivation is atypical and significant and the state has created the liberty interest by statute or regulation." ' *Id.* (citation omitted).

*Atypical and Significant Hardship*

The defendants argue that LaBounty does not have a protected liberty interest because his confinement in SHU was not atypical or significant. To determine whether the conditions of a particular confinement impose an "atypical and significant hardship" one must undertake a factual analysis. *Id.* "The circumstances that the court must examine include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions....' " *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000) (citation omitted). It is clear that "[c]onfinement in SHU may impose hardships that are atypical or significantly different from the burdens of ordinary prison confinement." *Id.* " 'The content of the *Sandin* standard of 'atypical and significant hardship' is an issue of law, but if the facts concerning the conditions or the duration of confinement are reasonably in dispute, the jury (where one is claimed) must resolve those disputes and then apply the law of atypicality, as instructed by the Court." ' *Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000) (citation omitted).

Material issues of fact exist as to whether LaBounty's confinement in SHU was "atypical" as compared to the conditions of other inmates in both administrative confinement and in the general population. As noted above, LaBounty asserts that while he was in SHU, he was denied medication and medical treatment, writing materials, books, and exercise.[FN6] If proven true, these conditions would appear to be atypical when compared to the conditions of confinement not only of inmates in administrative confinement and in the general population, but also of other inmates in punitive segregation. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 304.1 *et seq.; Colon,* 215 F.3d at 230 (stating that "normal conditions of SHU confinement in New York" include one hour of exercise per day, two showers a week, and a limited number of books). LaBounty further asserts that the conditions in SHU caused him significant hardship in a number of ways, including severe physical pain and the loss of hearing.

> [FN6.] Although not included in the list of issues from the February 13, 2001 Order, LaBounty also presents evidence that he was allowed only two showers in one month.

**\*5** The defendants rely on the length of LaBounty's sentence of confinement for their argument that his punishment was not atypical and significant. While it has been found in at least one other case that as much as 101 days in SHU did not run afoul of *Sandin, Sims,* 230 F.3d at 23, there is no litmus test based on the length of confinement alone-as the remand here demonstrates. *See also Colon,* 215 F.3d at 232 n. 5. Even a relatively brief term in segregated confinement may violate the law. *Taylor v. Rodriguez,* 238 F.3d 188, 196 (2d Cir.2001).

The defendants have also submitted evidence regarding the percentage of inmates in disciplinary confinement. These statistics do not address the specific conditions experienced by LaBounty during his confinement in SHU. *See Welch v. Bartlett,* 196 F.3d 389, 393-94 (2d Cir.1999) (vacating summary judgment where plaintiff alleged that SHU hygiene conditions were far inferior to those in general population). "[M]erely calculating the percentage of prisoners sentenced to SHU confinement" says nothing about the qualitative experience of prisoners in confinement and the relative degree to which they are deprived of the care and facilities at issue here. *Kalwasinski v. Morse,* 201 F.3d 103, 107 (2d Cir.1999).

The defendants make several additional arguments which can swiftly be rejected. They argue that only those deprivations experienced by LaBounty that independently constitute a constitutional violation-such as deliberate indifference to his serious medical needs in violation of the Eighth Amendment or an interference with his ability to pursue litigation in violation of the First Amendment-should be considered in judging whether LaBounty suffered atypical and significant hardships.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

There is no authority within either *Sandin* or its progeny in this Circuit for such a heightened showing. The defendants also argue that the issue of whether LaBounty suffered atypical and significant hardships should be tested not by his personal experience in SHU but by what the prison regulations prescribe as the standard for treatment of SHU prisoners. They contend, for instance, that what is relevant is that SHU prisoners are supposed to receive one hour per day of out of cell exercise and either two or three showers a week (depending on the level of prison) and not that LaBounty contends he received no opportunity to exercise and two brief showers in one month. The individualized inquiry required by the law is of the actual experience of the inmate, not what the experience should have been. *Sims,* 230 F.3d at 22-23. Finally, the defendants contend that they are entitled to summary judgment because while LaBounty's description of his deprivations is sufficient to create issues of fact regarding his own experience, he has not presented evidence that inmates in general population or in administrative confinement were not subjected routinely to those same deprivations. LaBounty has, until this point in the litigation, proceeded *pro se.* He was entitled to rely on the prison's regulations, well established law, and the basic standards of decency, to make the point that the deprivations of medical care, exercise, showers, books, and writing material that he alleges he experienced for one month cannot be the general experience of inmates incarcerated in New York state.

*Liberty Interest Created by State Law*

**\*6** The defendants argue that New York State has not granted inmates a protected liberty interest in remaining free from disciplinary confinement. In *Hewitt v. Helms,* 459 U.S. 460, 471-72 (1983), the Supreme Court held that a state-created "liberty interest arises when state statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999). *Sandin* did not replace *Hewitt*'s description of the process that creates a cognizable "liberty interest." *Tellier,*-F.3d-, 2001 WL 457767, at *7; *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999); *Welch,* 196 F.3d at 394 n. 4. Where a regulation requires "in language of an unmistakably

mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates," *Tellier,*-F.3d-, 2001 WL 457767, at *8 (citation omitted), then the regulation creates a protectable liberty interest.

New York regulates the process through which SHU disciplinary confinement may be imposed. Regulations allow such confinement only upon "[d]isposition of superintendent's Tier III hearing for a designated period of time as specified by the hearing officer." N.Y. Comp.Codes R. & Regs. tit. 7, § 301.2 (McKinney 1999). The regulations further explain the manner in which the Tier III hearings must be conducted.

Upon receipt of a misbehavior report from the review officer, the hearing officer *shall* commence the superintendent's hearing as follows:

(a) The misbehavior report *shall* be served on the inmate at least 24 hours before the superintendent's hearing. If the inmate is confined and requests an assistant, the hearing *may not* start until 24 hours after the assistant's initial meeting with the inmate.

(b) The inmate *shall* be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals. The entire hearing *must* be electronically recorded.

(c) The inmate when present may reply orally to the charge and/or evidence and *shall* be allowed to submit relevant documentary evidence or written statements on his behalf.

N.Y. Comp.Codes R. & Regs. tit. 7, § 254.6 (McKinney 2000) (emphasis supplied). The regulations provide that "where the hearing officer affirms the charges on the basis of the evidence, the hearing officer may impose ... confinement to a cell or room continuously or to a special housing unit continuously or on certain days during certain hours for a specified period." *Id.* § 254.7.

It has long been recognized that New York's regulations authorizing restrictive confinement in SHU "provide sufficient limitation on the discretion of prison officials to create a liberty interest." *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984). *See also Sealey,* 197 F.3d at

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

585 (construing New York regulation regarding administrative confinement in SHU). New York has therefore created a liberty interest protected by the Due Process Clause.

B. *Qualified Immunity*

**\*7** The defendants contend that they are entitled to qualified immunity. Qualified immunity protects a state actor sued in his individual capacity from a suit for damages. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001). A state actor is qualifiedly immune if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Id.* (citation omitted).

LaBounty claims that he was deprived of his procedural due process rights during the 1995 disciplinary hearing because he was denied, among other things, the right to call witnesses and to introduce documentary evidence.[FN7] The law was clearly established in January 1995 that inmates have the right to call witnesses and submit documentary evidence at disciplinary hearings.[FN8] *Wolff v.. McDonnell,* 418 U.S. 539, 566 (1974); *Walker v. Bates,* 23 F.3d 652, 656 (2d Cir.1994). Since the contours of LaBounty's due process rights were well defined by both Supreme Court and Second Circuit precedent by the time Vuturo conducted LaBounty's disciplinary hearing in January 1995, the defendants have not demonstrated that they are entitled to qualified immunity as a matter of summary judgment.

> **FN7.** The parties agreed in February 2001 that the procedural irregularities at issue here were the delay in the hearing, the examination of witnesses outside of LaBounty's presence, and a prejudgment of the merits by a hearing officer. The defendants do not object to LaBounty's emphasis in this motion on the interference with his right to offer evidence.

> **FN8.** The defendants characterize the pertinent inquiry as whether the law was clearly established in January 1995, that inmates have a liberty interest in remaining free from SHU confinement. Defendants argue that the Second

Circuit law since *Sandin* has been "ambiguous at best." The extent to which *Sandin* may have unsettled the law on this issue is irrelevant since *Sandin* was handed down after LaBounty's hearing. The law was "clearly established" as of January 1995, that inmates have a liberty interest in remaining free from segregated confinement such as SHU. *See, e.g., Walker v. Bates,* 23 F.3d 652, 655-56 (2d Cir.1994); *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984).

C. *Personal Involvement*

Defendants contend that they are not liable for the alleged due process violations because none of the remaining defendants was personally involved in the January 1995 disciplinary hearing. The defendants argue that hearing officer Vuturo is the only proper defendant and that no action may proceed against him because he was never served in this case. As LaBounty will be appointed counsel in this case, counsel for all parties will be able to explore this issue further.[FN9]

> **FN9.** The defendants argue that LaBounty failed to exhaust his administrative remedies by not filing grievances regarding the conditions in SHU. Because the defendants raised this argument for the first time in their reply brief and it has not been developed, it will not be considered. *See Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir.1999) (holding that it would not consider arguments raised in a reply brief because "[w]e repeatedly have said that we will not consider contentions first advanced at such a late stage").

D. *Appointment of Counsel*

Plaintiff has submitted an application requesting counsel. In determining whether to grant a request for counsel, the Court must consider

the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

*Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989). As a threshold matter, plaintiff must demonstrate that his claim has substance or a likelihood of success in order for the Court to grant plaintiff's request for counsel. *See Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986). Based on the Court's familiarity with this case and the legal issues presented, LaBounty's claim has substance and LaBounty has shown a need for representation. Accordingly, plaintiff's request for counsel is granted.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is denied. Plaintiff's request for counsel is granted. The Pro Se Office of this Court shall seek Pro Bono counsel for this plaintiff.

**\*8** SO ORDERED:

S.D.N.Y.,2001.

LaBounty v. Coombe
Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ramon ALVAREZ, Plaintiff,
v.
Thomas A. COUGHLIN, III, Commissioner NYS DOCS; William Brunet, Seargent; SGT. Davis; SGT. Emery; J. Baker, C.O.; W. Smith, C.O.; M. Hamilton, C.O.; Mushen, C.O.; Supt. Barkley; Nurse L. Lipscum; Thomas Farns, C.O.; Walter Lincoln, C.O., Defendants.
No. 94–CV–985(LEK)(DRH).

Feb. 6, 2001.
*MEMORANDUM–DECISION AND ORDER*

KAHN, J.

*1 Presently before the Court are Plaintiff's motions for relief from judgment and for recusal of the undersigned. For the reasons set forth below, Plaintiff's motions are denied.

I. BACKGROUND

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced the present 42 U.S.C. § 1983 action alleging violations of his Constitutional Rights on August 5, 1994. On July 18, 1993, while Plaintiff was incarcerated at Riverview Correctional Facility, defendant Baker alleges that she witnessed Plaintiff exposing himself to her in the recreation yard. Plaintiff was then taken from the yard to the infirmary by defendants Baker, Smith, and Hamilton. In his Amended Complaint, Defendant alleges, in relevant part, that he was repeatedly assaulted by defendants Davis, Smith, Mushen, and Hamilton while defendants Liscum, Baker, and Emery stood by and watched in violation of his Eighth Amendment rights. Plaintiff then alleges that he was escorted to the prison's special housing unit ("S.H.U.") and received further physical mistreatment from defendants Emery, Mushen, Hamilton, Smith, Farns, and Lincoln.

Plaintiff also alleges that his due process rights under the Fourteenth Amendment were violated by the disciplinary proceeding resulting from the incident, which was conducted by defendant Brunet. Finally, Plaintiff alleges that defendant Barkley participated in the violation of these rights by failing to address Plaintiff's grievances and by designating a biased hearing officer, defendant Brunet, to preside over Plaintiff's Tier III hearing.

On June 14, 1999, defendants Brunet, Baker and Barkley ("Defendants") filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff filed an affirmation in opposition to Defendants' motion on June 23, 1999 and a letter response on July 6, 1999. By an Order dated October 25, 1999, this Court granted Defendants' motion for summary judgment and dismissed Plaintiff's case against them in its entirety.[FN1] Plaintiff's current motions for relief from judgment and recusal were filed on November 12, 1999 and March 23, 1999, respectively.

FN1. Also still pending before the Court is a motion for summary judgment filed by Plaintiff September 1, 1998. The motion was originally dismissed by the Court's Order adopting the Report–Recommendation of United States Magistrate Judge David R. Homer, which held that the motion was untimely and, in the alternative, that it failed on the merits. Then, by an Order dated June 1, 1999, the Court vacated its previous order and held that Plaintiff's motion would be addressed on the merits, along with Defendants' motion for summary judgment. However, Judge Homer's Report–Recommendation did address the merits of Plaintiff's motion. The Court has undertaken a de novo review of the record and has determined that Plaintiff's motion should be dismissed for the reasons discussed in the Report–Recommendation.

II. ANALYSIS

A. Relief from Judgment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

Plaintiff's motion, although termed a "motion for relief from judgment," is brought pursuant to Local Rule 7.1(g). Accordingly, it will be treated by the Court as a motion for reconsideration.

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. P'ship,* 182 B.R. 1, 3 (N.D.N.Y.1995). Defendant does not argue that there has been an intervening change in controlling law or the availability of new evidence. Therefore, the basis for this motion must be that the Court made a clear error of law or needs to correct a manifest injustice. Although this Court enjoys broad discretion when making a determination to reconsider on this ground, *Von Ritter v. Heald,* 876 F.Supp. 18, 19 (N.D.N.Y.1995), it will not disregard the law of the prior case unless "the Court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981).

*1. Discovery Matters*

**\*2** Plaintiff, in part, objected to Defendants' motion for summary judgment on the ground that Defendants have yet to comply with several orders by this Court compelling production. Ordinarily, Defendants' failure to comply with discovery orders would make a motion for summary judgment premature. However, in this case, the outstanding items sought by Plaintiff do not relate to the claims against the three defendants who have brought the present action.

Plaintiff points to two orders compelling Defendants to comply with his discovery requests. The first, signed on June 26, 1997, orders Defendants to provide Plaintiff with: (1) the names, identification numbers, and cell locations of all inmates that were confined in the Special Housing Unit the evening of the event; (2) copies of any witness refusal forms; (3) copies of Plaintiff's medical records from July 18, 1993 to September 27, 1993; (4) copies of medical refusal forms indicating that Plaintiff refused his medication on the day of the incident; (5) copies of any reports prepared by prison staff regarding Plaintiff's refusal to take his medication between July 18, 1993 and September 27, 1993; and (6) copies of psychiatric reports regarding Plaintiff dated July 18, 1993 to September 27, 1993. The second order, signed on January 29, 1998, requires Defendants to provide Plaintiff with clearer copies of photographs taken of Plaintiff on the day of the incident.

To the extent any of these items exist, they are not relevant to the summary judgment motion before the Court. Accordingly, the Court is free to address the summary judgment motion of these three defendants. However, if Defendants still have not produced the complained of documents and photographs, Plaintiff is free to file another motion to compel or a motion for sanctions.

*2. Defendant Baker*

In their motion for summary judgment, Defendants argue that Plaintiff's claims against defendant Baker are conclusory and insufficient because they do not contain specific allegations of fact indicating a deprivation of rights. *See Barr v. Abrams,* 912 F.2d 52, 56 (2d Cir.1986). Plaintiff's Amended Complaint makes mention of defendant Baker only once. Plaintiff's first cause of action alleges that:

[t]he willful acts and omissions of defendant J. Baker constituted gross deprivation of the plaintiff's Civil Rights when J. Baker subject[ed] or caused plaintiff to be subjected to cruel and unusual punishment and failed to intervene to secure the plaintiff's health and safety.

However, Plaintiff's statement of facts does not allege that defendant Baker was present at the time of the beating

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

or that Baker had any knowledge whatsoever of the beating.

In fact, Plaintiff's statement of facts does not mention defendant Baker at all. The statement of facts does, on the other hand, describe with specificity the involvement of a number of prison staff members, including defendant Liscum who allegedly observed the assault without taking any action to intervene, suggesting that Baker was not present at the time of the beating. Accordingly, Plaintiff's claims against defendant Baker do not contain any specific allegations of fact regarding her alleged failure to intervene and this Court was not in error when it dismissed them.

### 3. *Defendant Barkley*

**\*3** Defendants argue that Plaintiff has not alleged sufficient personal involvement on the part of defendant Barkley. In order to maintain a Section 1983 action, a plaintiff must allege direct personal involvement by the defendant in the alleged constitutional deprivation. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (1994). Liability may not be based on respondeat superior or vicarious liability. *See Al– Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisors may be held liable for personal involvement when they: (1) are directly involved in the alleged events; (2) fail to rectify a constitutional violation after being notified of the situation; (3) create or allow to continue a policy of unconstitutional practices; or (4) commit gross negligence in supervising the individuals responsible for the constitutional violations. *See Wright,* 21 F.3d at 501.

Here, Plaintiff's complaint baldly alleges that defendant Barkley failed to address Plaintiff's grievance complaint and appointed a biased hearing officer to conduct Plaintiff's disciplinary hearing. Plaintiff does not make any specific factual allegations regarding defendant Barkley's involvement in his case. Plaintiff's statement of facts fails to allege facts establishing that Barkley ever reviewed his grievance. Indeed, Plaintiff's own exhibit reveals that Harlan W. Jarvis, Jr., Acting Superintendent, rather than defendant Barkley, reviewed Plaintiff's

grievance. Moreover, an exhibit introduced by Defendants, and not contradicted by Plaintiff, shows that Mr. Jarvis also appointed the hearing officer for Plaintiff's disciplinary hearing.

"It is not enough to allege that officials failed to carry out the duties of their office without defining these duties or how each individual failed to meet them." *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, at *5– *6 (S.D.N.Y. July 13, 1998) (citing *Beaman v. Coombe,* No. 96 Civ. 3622, 1997 WL 538833, at *3 (S.D.N.Y. Aug. 29, 1997), *aff'd in relevant part* No. 97–2683, 1998 WL 382751, at **1 (2d Cir. May 13, 1998)). Because Plaintiff's claim against defendant Barkley fails to allege with sufficient specificity his personal involvement in the alleged constitutional violations, it was properly dismissed by the Court.

### 4. *Defendant Brunet*

Plaintiff alleges that defendant Brunet violated his Due Process rights under the Fourteenth Amendment in the conduct of his disciplinary hearing. Defendants argue that (1) Plaintiff's claim is barred by the Supreme Court decision in *Sandin v. Conner,* 515 U.S. 472 (1995), because Plaintiff has not alleged that he had a protected liberty interest; (2) Plaintiff was nevertheless accorded all of the process due under *Wolff v. McDowell,* 418 U.S. 539 (1974); and (3) defendant Brunet is protected by qualified immunity in any event.[FN2] In order to establish a due process violation, a defendant must "prove that the state has created a protected liberty interest and that the process due was denied." *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)).

> FN2. Defendants also argue in their brief that Plaintiff's claim is barred by the Supreme Court decisions in *Heck v. Humphrey,* 512 U.S. 477 (1994), and *Edwards v. Balisok,* 520 U.S. 641 (1997). Following the filing of Defendants' brief, however, the Second Circuit held that a Section 1983 suit "challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards." Jenkins v. Haubert,* 179 F.3d 19, 27

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

(2d Cir.1999). Because Plaintiff's complaint challenges the conditions of, as opposed to the fact or duration of his confinement, the *Heck* and *Edwards* decisions are not applicable.

a. *Protected liberty interest*

**\*4** In *Sandin,* the Supreme Court considered whether prisoners have a protected liberty interest entitling them to due process in disciplinary proceedings and held that such interests "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Sandin,* 515 U.S. at 483–84. Following the *Sandin* decision, the Second Circuit held that, in order for a liberty interest to be protectable, a plaintiff "must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin,* and that the state has granted inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

i. Atypical and significant hardship

The Second Circuit has repeatedly held that, in determining whether a liberty interest has been affected, a district court is required to undertake extensive fact-finding regarding both the length and conditions of confinement and make specific findings in support of its conclusions. *See, e.g., Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997); *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997); *Sealey v. Giltner,* 116 F.3d 47, 51–52 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998). The Second Circuit makes clear that it is not enough to look at the length of time a prisoner has been confined to SHU in determining whether he has a liberty interest. *Brooks,* 112 F.3d at 49. Instead, courts must also make a factual finding as to the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population. *Id.* (citing *Miller,* 111 F.3d at 8–9).

However, in *Hynes v. Squillance,* 143 F.3d 653 (2d Cir.1998), the Second Circuit held that, "in cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, the district court need not provide such detailed explanation

of its reasoning." *Id.* at 658. There, the plaintiff offered no evidence in support of his argument that his 21–day confinement was atypical or significant to contradict the defendants' submission showing that the conditions of confinement were typical. *See id.* The ruling was explicitly limited, however, to cases involving shorter periods of segregated confinement. *See id.* The Court held that the decisions in *Miller, Brooks,* and *Wright* all required specific factual findings because they "involved relatively long periods of confinement." *Id.; see also Spaight v. Cichon,* No. 98–2537, 1998 WL 852553, at \*2 (2d Cir. Dec 8, 1998) (holding that a 39–day confinement was not so short as to be subject to dismissal under *Hynes* without further analysis); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (advising district courts to develop a detailed factual record for cases involving segregated confinement of between 101 and 305 days in lenght). The plaintiff in *Miller,* for example, was subject to disciplinary segregation for 125 days. *See Miller,* 11 F.3d at 7.

**\*5** In this case, Plaintiff was subject to 120 days in disciplinary segregation, much closer to the period of confinement in *Miller* than that in *Hynes.* Accordingly, the Court may not rely on the length of Plaintiff's confinement alone and must undertake a detailed factual finding regarding the conditions of Plaintiff's confinement as compared to other forms of segregated confinement and to the general population of inmates.

To establish that Plaintiff's confinement was not atypical and significant, Defendants put forth the affidavit of Mr. Donald Selsky, Director of the Special Housing/Inmate Disciplinary Program. However, Selsky's affidavit discusses the special housing program on a statewide basis in comparison to general population policies statewide, but acknowledges that conditions differ from facility to facility. The affidavit also includes a variety of statistics regarding SHU confinement establish, including the fact that 19,983 of the 215,701 inmates (9.26%) in the prison system between 1991 and 1996 were penalized with SHU confinement and that 17,302 of those received terms up to one year (85.17%). It does not, however, provide any evidence regarding the specific conditions of Plaintiff's confinement.

This leaves the Court with insufficient evidence with

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

which to compare Plaintiff's conditions of confinement to other forms of segregated confinement and to the general population. If such a generalized showing by the government regarding the typicality of segregated confinement was satisfactory, then there would be no need for the specific factual findings required in each case by the Second Circuit.

Indeed, in *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1994), the Second Circuit held that a district court's reliance on the percentage of the prison population receiving punitive terms of segregated confinement and the percentage of that group receiving terms similar in length to that of the plaintiff was inappropriate. *See id.* at 394. The Court held that

[t]he theory of *Sandin* is that, notwithstanding a mandatory entitlement, a deprivation is not of sufficient gravity to support a claim of violation of the Due Process Clause if similar deprivations are typically endured by other prisoners, not as a penalty for misbehavior, but simply as the result of ordinary prison administration.

*Id.*

A comparison between the duration of a plaintiff's SHU confinement and the SHU terms received by other inmates who were convicted of misbehavior "does not tell whether [the plaintiff's] deprivation was more serious than typically endured by prisoners as an ordinary incident of prison life." *Id.* Likewise, the court held that punitive terms in SHU

are not a 'normal incident' for a prisoner whose wrongdoing must be established according to due process standards if the consequence of an adverse finding is confinement in atypical conditions of severe hardship. How many prisoners receive such terms as punishment for misbehavior does not measure how likely a prisoner is to suffer comparable deprivation in the ordinary administration of the prison.

**\*6** *Id.* Moreover, the Court expressed doubt that, even if such a statistic was held to be relevant, the fact that 10% of prisoner were subject to terms in SHU made such

confinement typical. *See id.* at 394 n.2.

As the record before the Court is not sufficient to determine whether Plaintiff's confinement was an atypical and significant hardship, summary judgment at this time is inappropriate.

### ii. State created liberty interest

Defendants also argue the second prong of the *Frazier* test, requiring Plaintiff to establish the existence of a state-created liberty interest in remaining free from segregated confinement, has not been satisfied. Defendants contend that no New York law grants prisoners the right to be free from segregated confinement.

Defendants argue that previous Second Circuit precedent establishing the existence of such a state-created interest, *see, e.g., Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984), does not survive the Supreme Court's decision in *Sandin.* However, *Sandin* does not effect the validity of these decisions. *See Ramirez v. McGinnis,* 75 F.Supp.2d 147, 153 (S.D.N.Y.1999) (holding that *Sandin* "simply limits due process protection to hardships that are also 'atypical and significant' ") (citing *Gonzalez v. Coughlin,* 969 F.Supp. 256, 257 (S.D.N.Y.1997); *Wright v. Miller,* 973 F.Supp. 390, 395 (S.D.N.Y.1997); *Lee v. Coughlin,* 26 F.Supp.2d 615, 632–33 (S.D.N.Y.1998)). Accordingly, New York State regulations do create a protected liberty interest in remaining free from disciplinary segregation.

### b. *Process Due*

Defendants next urge the Court to find that, even if Plaintiff was entitled to due process protections, he was afforded the necessary procedural protections at his hearing. In a conclusory fashion, Defendants argue that Plaintiff "received advance notice of the charges, called witnesses at the hearing, and testified on his own behalf."

When charged with a disciplinary infraction that could lead to loss of good-time credits or to confinement in SHU, a prisoner is entitled to "at least the minimum requirements of procedural due process appropriate for the circumstances." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974); *see Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993) (citing *McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983)). This requires, among things, that the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

prisoner be given advance notice of the charges against him and a meaningful opportunity to marshall and present evidence in his defense, which includes the right to "call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563, 566.

Plaintiff specifically argues that defendant Brunet denied him due process by, among other things, disregarding his complaints regarding the confiscation of his trial materials and refusing to allow him to present an eye witness who would testify that Plaintiff was beaten by several of the defendants. The requirement that a prisoner be given advance notice of the charges against him is "no mere formality." *Benitez,* 985 F.2d at 665. Such "notice must be 'written ... in order to inform [the inmate] of the charges and to enable him to marshall the facts and prepare a defense." ' *Id.* (quoting *Wolff,* 418 U.S. at 564). Moreover, the prisoner must be given the notice no less than 24 hours before the hearing and be permitted to retain the notice for at least 24 hours. *See Benitez,* 985 F.2d at 665–66.

**\*7** Here, Plaintiff alleges that his litigation papers were all confiscated from him by the guards in the SHU and that, when he complained of these actions to defendant Brunet, his concerns were ignored. Confiscation of a prisoner's papers made in preparation for a hearing, particularly the notice of charges, significantly hampers the prisoner's ability to prepare his defense. Defendants do not address Plaintiff's allegation in their papers. Accordingly, summary judgment is not appropriate on this ground.

A prisoner is also given the right to call and present witnesses in his defense at a disciplinary hearing. *See Ponte v. Real,* 471 U.S. 491, 495 (1985) (citing *Wolff,* 418 U.S. at 566)). This right is not absolute, however, as prison officials must be allowed "discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff,* 418 U.S. at 566; *see also Ponte,* 471 U.S. at 496 (suggesting that prison officials may also deny a witness request on grounds of irrelevance or lack of necessity). However, "a hearing official has a duty to

articulate an explanation for the decision to exclude a witness." *Rivera v. Coughlin,* No. 92 Civ. 3404, 1994 WL 263417, at *6 (S.D.N.Y. June 13, 1994).

In this case, Plaintiff alleges that he requested the presence of an eye-witness to the events in question but that defendant Brunet did not allow it. The transcript to the hearing reveals that Brunet informed Plaintiff that he could not contact the witness because he could not contact the witness and the hearing had to be finished that day.

Defendants have not argued, much less established, that these were reasonable limits placed on the hearing by Brunet. Moreover, Defendants have not presented any evidence or argued that allowing the witness' testimony would have been "unduly hazardous to institutional safety" or create a "risk of reprisal or undermine authority." Defendants do not even argue the validity or importance of those reasons set forth by defendant Brunet at the hearing. Finally, it is clear that the proposed evidence in this case was not irrelevant or unnecessary. Accordingly, genuine issues of material fact exist which prevent a finding of summary judgment at this time.

c. *Qualified Immunity*

Finally, relying solely on their prior arguments, Defendants contend that defendant Brunet is protected by qualified immunity. The doctrine of qualified immunity protects a Section 1983 defendant from liability for damages if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Defendants are further protected from liability where the rights are clearly established if it was objectively reasonable to believe that their actions did not violate those rights. *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987).

**\*8** The officials do not have such immunity, however, where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. In determining whether a particular right was clearly established at the time of the alleged violation, courts should consider:

(1) whether the right in question was defined with

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

"reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991).

In this case, Plaintiff's right to notice and to present witnesses were clearly established and well defined at the time of the hearing, July 22, 1993. Although, prior to 1993, it was not entirely clear whether a prisoner was entitled to keep his notice for at least 24 hours, *Benitez* clarified that this was so on February 3, 1993. Therefore, it was not objectively reasonable for defendant Brunet to leave unanswered Plaintiff's complaint that his litigation papers were confiscated.

Also, the right to present witnesses at a disciplinary hearing and the limitations on that right were well defined prior to the time of the hearing. Whether the rationale offered by defendant Brunet for excluding the witness, the difficulty in locating the witness and the need to complete the hearing that day, are sufficient justification to support his qualified immunity defense are material issues of fact which cannot be resolved on a motion for summary judgment. *See Rivera,* 1994 WL 263417, at *6. Accordingly, summary judgment may not be granted on this ground.

In light of these holdings, it is evident that this Court made a clear error of law and that reconsideration is appropriate as to Plaintiff's claims against defendant Brunet.

B. Recusal

Plaintiff's motion for recusal is based on 28 U.S.C. § 455(a), which states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.* Importantly, it does not matter whether the judge is in fact subjectively impartial, only whether the objective facts create the appearance of impartiality. *United States v. Bayless,* 201 F.3d 116, 126 (2d Cir.2000);

*Hughes v. City of Albany,* No. 98–2665, 1999 WL 709290, at **2 (2d Cir. July 1, 1999). "The ultimate inquiry is whether 'a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned." ' *Hughes v. City of Albany,* 33 F.Supp.2d 152, 153 (N.D.N.Y.1999) (quoting *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992)); *see Bayless,* 201 F.3d at 126.

In this case, Plaintiff's claim is based on the congregation of a number of the Court's rulings and the overall handling of his case. The Supreme Court has held, however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994); *see Hughes,* 1999 WL 709290, at **2. Indeed, the Second Circuit has held that "opinions formed by a judge on the basis of facts introduced or events occurring in the course of judicial proceedings do not constitute a basis for recusal unless they indicate that the judge has a 'deep-seated favoritism or antagonism that would make fair judgment impossible." ' *United States v. Diaz,* 176 F.3d 52, 112 (2d Cir.1999) (quoting *Liteky,* 510 U.S. at 555). Plaintiff has put forth nothing, and a review of the record reveals nothing, which would suggest to an objective observer that the Court has a deep-seated favoritism for Defendants or any antagonism against Plaintiff. Therefore, his motion is denied.

III. CONCLUSION

**9** ORDERED that Plaintiff's motion to vacate is GRANTED in part and DENIED in part consistent with the terms of this opinion;

ORDERED that Plaintiff's claim against defendant Brunet be REINSTATED and the judgment dismissing the case in defendant Brunet's favor be VACATED;

ORDERED that Plaintiff's motion for recusal is DENIED; and it is further

ORDERED that the clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

N.D.N.Y.,2001.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

Alvarez v. Coughlin
Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.
  I. *Introduction* [FN2]
> FN2. This matter was referred to the undersigned
> for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

  *1 Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

  II. *Procedural History*

  On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

  III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

  On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct.' " *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp 2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Jeffrey ALLRED, Plaintiff,
v.
Captain KNOWLES, Hearing Officer Sgt. Noto, Defendants.

No. 06–CV–0456Sr.
Oct. 5, 2010.

Jeffrey Allred, Queensvillage, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

### *DECISION AND ORDER*
H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

**\*1** Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including entry of final judgment. Dkt. # 14.

Plaintiff, Jeffrey Allred, filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. # 1. Plaintiff alleges that while an inmate at the Gowanda Correctional Facility ("Gowanda") his rights pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated. *Id.* Currently before the Court is defendants' motion for summary judgment. Dkt. # 18. For the following reasons, defendants' motion for summary judgment is granted and the plaintiff's complaint is dismissed in all respects.

### *BACKGROUND*
Plaintiff filed this action on July 11, 2006, against defendants, Michael Knowles and Louis

Noto, pursuant to 42 U.S.C § 1983, seeking monetary damages. *Id.* The action arises from a misbehavior report issued on or about July 27, 2003 by defendant Noto against plaintiff and the resulting Tier III disciplinary hearing conducted by defendant Knowles. *Id.* Specifically, the complaint alleges the issuance of a false misbehavior report, retaliation and violation of plaintiff's due process rights. *Id.*

At the time of the events alleged in the complaint, plaintiff was an inmate in the care and custody of the New York State Department of Correctional Services ("DOCS") housed at Gowanda. Dkt. # 1, p. 2; Dkt. # 20, p. 1. Defendant Knowles was a Captain at Gowanda and his duties included, from time to time, conducting inmate disciplinary hearings. Dkt. # 1, pp. 3–4; Dkt. # 21, pp. 1–2. Sergeant Noto was a DOCS Sergeant on plaintiff's housing unit at Gowanda. Dkt. # 1, p. 4; Dkt. # 22, pp. 1–2.

On July 22, 2003, at approximately 8:30 p.m., Correctional Officer Millich discovered several marijuana cigarettes during a search of inmate Meja's cell. Dkt. # 22, p. 3. Consequently, defendant Noto initiated an investigation into the matter. Dkt. # 1, p. 8; Dkt. # 22, p. 3. Defendant Noto maintained that Meja told him that he had purchased the marijuana cigarettes from plaintiff. Dkt. # 22, p. 3. Based on Meja's identification of plaintiff and information allegedly received from confidential informant(s)—who identified plaintiff as a drug dealer and indicated that the sale in question occurred between 7:00 and 8:00 p.m. on July 22, 2003 in the prison yard—defendant Noto issued a misbehavior report charging plaintiff with violating Inmate Rule 113.25. Dkt. # 1, pp. 22 and 25; Dkt. # 22, p. 3. Inmate Rule 113.25 provides that "an inmate shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia, controlled substance or marijuana. An inmate shall not conspire with any person to introduce such items into the facility." Dkt. # 22, p. 2; *see also* 7 NYCRR § 270.2(14)(xv).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

On July 28, 2003, a Tier III disciplinary hearing was conducted before defendant Knowles. Dkt. # 1, p. 23; Dkt. # 21, p. 2. At the hearing, plaintiff testified in his own defense that he was at a Nation of Islam ("NOI")/Black studies program during the period of the alleged drug sale in the prison yard. Dkt. # 1, p. 24; Dkt. # 21, p .6. Plaintiff called two other inmates, Ford and Williams, as alibi witnesses. Dkt. # 1, p. 29; Dkt. # 21, p. 7. Ford and Williams attended the NOI/Black studies program with plaintiff, but could not verify the time plaintiff left. Dkt. # 21, pp. 7 and 16. The sign-out sheet for the NOI/Black studies class did not indicate the time plaintiff left, although it indicated that both Ford and Williams left at 7:00 p.m. Dkt. # 21, p. 17. Plaintiff did not sign back into his housing unit until 8:10 p.m. and no one was able to verify his whereabouts after 7:00 p.m. Dkt. # 21, p. 17. Defendant Knowles interviewed the confidential informant(s) outside the presence of plaintiff and found them to be credible witnesses. Dkt. # 21, pp. 7–8. The confidential informant(s) identified plaintiff as a drug dealer and indicated that the sale of the drugs to Meja occurred between 7:00–8:00 p.m. in the prison yard. *Id.* Meja also testified at the hearing, and recanted his initial identification of plaintiff as the person who sold him drugs. Dkt. # 1, p. 26; Dkt. # 21, p. 11. When asked by defendant Knowles why he initially told defendant Noto that plaintiff was the individual who sold him drugs, Meja answered that he did so because he wanted defendant Noto to "leave [him] alone." Dkt. # 24, Ex. D, p 5. In response, defendant Knowles asked Meja to confirm, by answering in either the affirmative or the negative, if he initially identified plaintiff as the individual who sold him drugs, to which Meja answered in the affirmative. *Id.*

**\*2** On August 3, 2003, at the close of the disciplinary hearing, defendant Knowles entered a guilty finding against plaintiff. Dkt. # 24, Ex. C. Based on the Hearing Disposition Report completed by defendant Knowles, he based his guilt determination on the following evidence: defendant Noto's misbehavior report and his testimony that Meja initially identified plaintiff as the individual who sold Meja drugs in the yard; and the testimony of the confidential informant(s). *Id.* Defendant Knowles imposed a penalty of 12 months of confinement in special housing unit ("SHU") and a loss of privileges between the period August 22, 2003 and August 22, 2004.

## DISCUSSION AND ANALYSIS
### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant,* 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the ap-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

propriate statute. The non-moving party must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Due Process Claim**

**\*3** Plaintiff alleges that defendants deprived him of his constitutional right to procedural due process. Dkt. # 1, p. 42. This allegation appears to be based on the following: (1) that he was not afforded all of the procedural safeguards set forth in *Wolff v. McDonnell*[FN1] during the Tier III disciplinary hearing; and (2) that defendant Knowles was not an impartial hearing officer.

> FN1. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975).

To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.,* quoting *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999). In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 64–65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss,* No. 02 Civ 5804(HB), 2003 U.S. Dist. LEXIS 18103, 2003 WL 22327110 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer,* 364 F.3d 60; *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2003) (vacating dismissal of, *inter alia,* procedural due process claims, stating, during little more than a 4 1/2 month period, Sims was sentenced to SHU for a total of nearly 3 1/2 years); *Durran v. Selsky,* 251 F.Supp.2d 1208, 1214 (W.D.N.Y.2003) (quoting *Tookes v. Artuz,* No. 00CIV4969, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002)) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days

or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"). Here, following the Tier III disciplinary hearing, defendant Knowles imposed a penalty of 12 months of confinement in SHU and a loss of privileges between the period August 22, 2003 and August 22, 2004. Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest. The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process. Defendants maintain that plaintiff was not. Dkt. # 21, p. 2; Dkt. # 22, p. 7.

**\*4** In *Wolff,* the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff,* 418 U.S. at 563–66. Specifically, the Supreme Court identified the following procedures: advance written notice of the claimed violation or charges; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken. *Id* . Additionally, the findings must be supported by some evidence in the record. *Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, contrary to plaintiff's contention, he was afforded all of the procedural safeguards set forth in *Wolff.* Dkt. # 24, p 4–5. Plaintiff was provided with a copy of defendant Noto's misbehavior report before the hearing, giving him advance notice of the charge against him.[FN2] Dkt. # 1, p. 22; Dkt. # 21, p. 5. Plaintiff had the opportunity to call witnesses and present evidence. Dkt. # 1, pp. 26, 29; Dkt. #

21, pp. 6, 8. Plaintiff was also provided with a written statement of the guilty finding and the evidence relied on for the disposition. Dkt. # 21, p. 12. The guilty disposition was supported by evidence in the form of defendant Noto's notes; defendant Noto's misbehavior report and testimony; and the testimony of the confidential informant(s), particularly because plaintiff's alibi was uncorroborated. *Id.* at pp. 10–11. Thus, plaintiff's claim that he was deprived of procedural due process fails as a matter of law.

> **FN2.** Plaintiff concedes this fact. However, he suggests that he was deprived of his due process rights under the standard set forth in *Wolff* because defendant Knowles found him guilty of drug possession, rather than sale of a narcotic substance, which he was charged with in the misbehavior report. Dkt. # 24, p 5. However, inmate Rule 113.25, which plaintiff was charged with in the misbehavior report and found guilty of at the close of the Tier III hearing, encompasses possession **and** sale of a narcotic. Dkt. # 21, pp. 5 and 19.

**Impartial Hearing Officer**

Plaintiff contends, in particular, that his due process rights were violated because defendant Knowles was not an impartial hearing officer. *See* Dkt. # 1, p. 6–8. Plaintiff points to the following to support his allegation: (1) that defendant Knowles was involved in both the Tier III hearing and in the investigation into plaintiff's drug sale; (2) that defendant Knowles instructed Meja to respond affirmatively at the hearing that plaintiff had sold Meja drugs although Meja testified at the hearing that he did not know plaintiff; and (3) that defendant Knowles rejected his alibi and confused the time of the drug sale at issue. Dkt. # 1, pp. 28, 39; Dkt. # 24, p. 6.

Indeed, as plaintiff correctly contends, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see Wolff,* 418 U.S. at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

570–71; *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, inter alia, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

**\*5** It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is *"some evidence in the record"* to support the findings of the hearing. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added).

In this case, there is ample evidence to support defendant Knowles' guilty finding: defendant Noto's misbehavior report and his testimony that Meja originally identified plaintiff as the individual who sold him drugs; and the testimony of the confidential informant(s), which was considered outside the presence of plaintiff. Dkt. # 21, pp. 8–9.

Notably, plaintiff's only defense at the Tier III hearing was that he had been at an NOI/Black studies program at the time of the drug sale, which took place allegedly between 7:00–8:00 p.m. Dkt. # 21, p. 7. However, inmates Ford and Williams could not verify plaintiff's alibi defense. *Id.* Because plaintiff did not sign back into his cell area until 8:10 p.m., defendant Knowles determined that there was ample time for plaintiff to sell the drugs in the yard during the period of his unexplained absence. Dkt. # 21, pp. 7, 16–18.

Plaintiff further contends that defendant Knowles violated his constitutional right to due process by failing to adhere to the state guidelines for conducting prison disciplinary hearings (set forth in Title 7 of the NYCRR §§ 253.1(b), 254.1 FN3) because, he alleges, that defendant Knowles conducted the Tier III hearing and was also involved in the investigation of plaintiff's drug sale. Dkt. # 24, p 6.

> FN3. 7 NYCRR § 253.1 gives superintendents the discretion to designate DOCS employees to conduct disciplinary hearings. Pursuant to § 253.1(b), "[n]o person who has participated in any investigation of the acts shall be a hearing officer at a hearing relating to those acts, nor shall any person who has prepared or caused to be prepared the misbehavior report on which a hearing is held, act as the hearing officer on that charge." Section § 254.1 of 7 NYCRR precludes a person who was a witness to or who investigated an incident that is the subject of a disciplinary proceeding from acting as a hearing officer relating to that incident.

This argument fails because violations of state law that do not deprive the plaintiff of a right "secured by the Constitution and laws" are insufficient to support a claim under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004); *Blouin v. Spitzer,* 356 F.3d 348, 362 (2d Cir.2004). State procedural protections do not give rise to substantive federal rights. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir.2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."). Moreover, "[s]tate procedures designed to protect substantive liberty interests entitled to pro-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

tection under the federal constitution do not themselves give rise to additional substantive liberty interests." *Blouin,* 356 F.3d at 363. It is "federal law, not state regulations, [that] determines the procedures necessary to protect that liberty interest ." *Id.* (citing *Watson v. City of New York,* 92 F.3d 31, 38 (2d Cir.1996)). Therefore, "the only relevant inquiry was whether the constitutional [procedures] were met, not whether state procedures were followed." *Shakur,* 391 F.3d at 119 (citing *Holcomb,* 337 F.3d at 224). As set forth above, plaintiff's constitutional rights were not violated during the Tier III hearing. Plaintiff's exclusive reliance on defendants' alleged violations of 7 NYCRR §§ 253.1(b) and 254.1 is insufficient to support his claim under § 1983. *See Shakur,* 391 F.3d at 119; *Holcomb,* 337 F.3d at 224; *Ramsey v. Goord,* 661 F.Supp.2d 370, 391–92 (W.D.N.Y.2009).

**\*6** Accordingly, since plaintiff received all of the process he was due in the course of the Tier III disciplinary hearing, defendants' motion for summary judgment on plaintiff's due process claim is granted.

**Retaliation Claim**

Plaintiff alleges that, in retaliation for attending a Nation of Islam ("NOI")/Black Studies course and/or for his affiliation therewith, defendant Noto filed a false misbehavior report and gave false testimony and that defendant Knowles found him guilty. Dkt. # 1, p. 43.

"In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for 'adverse action' taken against him by defendants." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). Third, the plaintiff must establish a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citing *Dawes v. Walker,*

239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in the original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citing *Dawes,* 239 F.3d at 491). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

**\*7** Here, even assuming plaintiff's affiliation

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

with the NOI/Black studies program was constitutionally protected conduct, he cannot show that his affiliation therewith was a substantial motivating factor for the filing of the misbehavior report and the subsequent finding of guilt concerning the report. Defendant Knowles declares that he "did not even recall plaintiff prior to the hearing he conducted," and had no involvement whatsoever in any NOI activities. Dkt. # 21, p. 22. Similarly, defendant Noto declares that he had no knowledge of plaintiff's participation in the NOI/Black Studies program, and, up until the time of the instant litigation, "did not know that plaintiff attended such a course or was a member of the NOI." Dkt. # 22, p. 6. To this extent, plaintiff cannot demonstrate that his affiliation with the NOI/Black studies program was a motivating factor in defendants' actions. Since plaintiff cannot establish any plausible connection between NOI/Black studies participation and the misbehavior report and the guilty finding, his retaliation claim fails as a matter of law.

Assuming, *arguendo,* that plaintiff could show that the disciplinary actions were motivated by retaliatory animus (an assumption that has no basis in the record before this Court), plaintiff's retaliation claims would fail because defendants can easily show that they would have taken the same disciplinary actions even in the absence of the protected conduct. *See Davidson v. Chestnut,* 193 F.3d at 149 ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record shows that there was sufficient evidence, based on defendant Noto's investigation, to have charged plaintiff with a drug sale. Further, there was ample evidence at the Tier III disciplinary hearing for defendant Knowles to find plaintiff guilty of the drug sale charge. This is so particularly in the context of prison administration where courts must be cautious to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is granted.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Dkt. # 18. The Clerk of the Court is directed to enter judgment in favor of the defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*8 SO ORDERED.**

W.D.N.Y.,2010.
Allred v. Knowles
Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.